GLENN B. McCORMICK
Acting United States Attorney
District of Arizona
ANGELA W. WOOLRIDGE
Assistant United States Attorney
Arizona State Bar No. 022079
405 West Congress St.
Tucson, AZ  85701
Telephone: (520) 620-7300
Email: angela.woolridge@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-19-0338-TUC-JGZ (JR) |
| Plaintiff, | |
| vs. | GOVERNMENT'S SUPPLEMENTAL FORFEITURE BRIEF |
| Marco Antonio Peralta-Vega, | |
| Defendant. | |

The United States of America, by and through its undersigned attorneys, pursuant to this Court's Order at the Forfeiture Hearing on September 7, 2021 (Doc. 118), hereby submits its brief addressing the outstanding forfeiture disputes between the parties in this case.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**A.  Administrative Forfeiture**

In this case, United States Customs and Border Protection seized from the defendant $9,538 in U.S. currency and $24,620 in Mexican pesos ($1,119.10 U.S. dollars), all of which was determined to constitute and/or be derived from proceeds traceable to the defendant's smuggling offense.  The currency was submitted for administrative forfeiture. The agency complied with all the legal requirements of this procedure, and the currency was administratively forfeited.

United States Customs and Border Protection also seized two vehicles during the investigation, a 2016 Dodge Ram and a 2017 Jeep Wrangler, which were determined to

have facilitated the defendant's smuggling offense.  The Ram was not registered to the defendant, but instead was registered in Mexico to Valeria Hernandez Sanchez.  The Ram was valued at $9,538 and was administratively forfeited on December 6, 2019.  The Wrangler was registered to the defendant but was subject to a significant outstanding lien.  On October 30, 2019, the Wrangler was remitted to the lienholder, Ally Financial.

The value of the administratively forfeited assets (proceeds and facilitating property) should not be applied against the substitute assets order for judicial forfeiture (assets involved in the crime).  The government is not requesting a forfeiture money judgment for the value of proceeds the defendant obtained as a result of his offense of conviction, but rather to forfeit the firearms and ammunition involved in the offense.  Because these firearms and ammunition are unavailable for forfeiture due to an act or omission of the defendant, the government seeks to forfeit the value of those assets.  The value of the administratively forfeited assets should not be applied to the computation of the substitute assets order because the administratively forfeited assets are proceeds and facilitating property, and the assets sought to be judicially forfeited are assets involved in the crime.  The assets comprise separate categories and are not of the same class of forfeitable assets.

The government is entitled to forfeit all assets, both those which are proceeds and instrumentalities of the crime and those which were involved in or facilitated the crime. *See* Title 18, United States Code, Sections 924(d) and 981(a)(1)(C); and Title 22, United States Code, Section 401.  One class of assets does not offset the other.  Pursuant to Title 18, United States Code, Section 981(a)(1)(C), the government can seek forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 554(a).  However, the government has not chosen to request forfeiture of the proceeds in this case, which would result in an additional money judgment against the defendant.

/ / /

**B. Eighth Amendment**

In determining whether forfeiture is grossly disproportionate to the gravity of the offense so as to constitute an excessive fine in violation of the Eighth Amendment, the Court focuses on the following four factors: 1) the nature of the crime and its connection to other criminal activity, 2) whether the defendant fits into the class of persons at whom the statute was aimed, 3) the maximum sentence or fine under the applicable statute and sentencing guidelines, and 4) the harm caused by the offense. *United States v. $100,348.00 in U.S. Currency,* 354 F.3d 1110, 1121 (9th Cir.2004); *United States v. Bajakajian*, 524 U.S. 321 (1998). The government will address each of these factors herein, and submits that analysis of the factors establishes that the forfeiture it requests in this case is not grossly disproportionate to the gravity of the defendant's offense.

**1. Nature of Crime and Connection to Other Criminal Activity**

The nature of the defendant's crime is very serious. He smuggled and facilitated the smuggling of numerous deadly weapons from the United States to Mexico on behalf of a dangerous criminal organization. In *United States v. $132,245.00 in U.S. Currency*, 764 F.3d 1055 (9th Cir. 2014), the Ninth Circuit found the nature of the crime of bulk cash smuggling from Canada into the United States to be sufficiently serious to support forfeiture of $132,245.00. *Id.* at 1058, 1062. Here, where the items smuggled were weapons – firearms and thousands of rounds of ammunition – instead of cash, a forfeiture judgment of $21,027.50 can hardly be grossly disproportionate to the nature of the crime. Furthermore, as in *$132,245.00 in U.S. Currency*, the amount the government seeks to forfeit as a substitute assets judgement represents the value of the smuggled items. *Id*. at 1057.

As discussed in the government's original forfeiture brief (Doc. 94. pp. 3-4), the crime the defendant has been convicted of is clearly related to other activity. The defendant smuggled the firearms and ammunition into Mexico, where these items are illegal. The firearms and ammunition are thereafter used to perpetuate violent criminal activity in Mexico. Without individuals such as the defendant, who smuggle firearms and

ammunition into Mexico, criminal organizations in Mexico would not have the firearms and ammunition needed to further their illegal and dangerous activities. That the defendant was not charged with or convicted of other crimes in addition to his weapons smuggling offense is of no moment; the illegality of firearms and ammunition in Mexico and their connection to other serious crimes such as narcotics and human trafficking is sufficient to support an inference that the defendant's smuggling offense is related to additional criminal activity. *See $132,245.00 in U.S. Currency*, 764 F.3d at 1058-59 (forfeiture not excessive because money was "probably" derived from drug trafficking).

Furthermore, the defendant himself admitted that he was trafficking firearms and ammunition on behalf of two high-level Sinaloa cartel members. He also discussed murders committed by members of this cartel. Therefore, the Court need not infer the connection of the defendant's weapons smuggling offense to other criminal activity; by the defendant's own admissions, the weapons he smuggled facilitated the crimes and violence of a dangerous criminal organization in Mexico.

### 2. Class of Persons at Whom Statute was Aimed

The statute of the defendant's conviction applies to any person who "knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States." 18 U.S.C. § 554(a). The defendant fits squarely into the class of persons at whom his statute of conviction is aimed.

Here, the defendant received 53 weapons shipments - including 2,649 high capacity rifle magazines, and a total of 37,200 rounds of ammunition - at his residence/business and two separate storage facilities which he rented to receive and store the weapons shipments. He had ordered these weapons on behalf of different individuals in Mexico, and also allowed other individuals to use his address for the delivery of weapons. The defendant

then picked up the packages from his address and transported the weapons to the International Border, where he transferred them to another individual, and that individual then smuggled the weapons from the United States into Mexico. The defendant received payment for his offenses once the items were delivered in Mexico. The defendant also purchased and trafficked three handguns from the United States to Mexico.

The defendant committed not just one act to facilitate the smuggling of weapons in violation of 18 U.S.C. § 554(a), but rather several acts on multiple occasions. Shipping records confirmed he received 53 shipments of weapons between September 2016 and November 2018. He bought, received, transported, and facilitated the transfer of firearms and ammunition which was unlawfully exported from the United States into Mexico. At all times during this illegal activity, the defendant knew the firearms and ammunition were destined to be unlawfully exported into Mexico, and he committed his offense with the knowledge that he was violating the laws of the United States. His crimes are precisely those contemplated and encompassed by his statute of conviction, and he is the specific type of individual whose criminal conduct the statute was designed to prevent, deter, and punish. *See, e.g., United States v. Chi Tong Kuok*, 671 F.3d 931, 942-46 (9th Cir. 2012) (discussing applicability of 18 U.S.C. 544(a), generally); *United States v. Rivero*, 889 F.3d 618, 621-23 (9th Circ. 2018) (same).

### 3. Maximum Sentence and Fine

Also as discussed in the government's original forfeiture brief (Doc. 94. p. 3), the forfeiture of substitute assets up to the value of the forfeited firearms and ammunition is not excessive because the value of the firearms and ammunition is far below both the maximum fine provided by the statue and the high end of the applicable fine range provided by the United States Sentencing Guidelines for the offense for which the defendant pled guilty. *See* 18 U.S.C. §554 (maximum fine of $250,000); U.S.S.G. § 5E1.2(c)(3) (fine of $20,000 to $200,000); *United States v. Fong*, 831 Fed.Appx. 284 (9th Cir. 2020) (unpublished) (forfeiture less than one half statutory maximum statutory fine not grossly disproportional); *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1112 (9th

Cir. 2004); *United States v. 817 N.E. 29th Drive, Wilton Manors*, 175 F.3d 1304, 1309-10 (11th Cir. 1999).

Additionally, the maximum sentence of imprisonment of ten years and the applicable guideline sentencing range of 46-57 months for the defendant's offense of conviction weigh against an Eighth Amendment violation. In *$132,245.00 in U.S. Currency*, the Ninth Circuit found the maximum sentence of five years imprisonment and maximum guideline sentence of 27 months, both half of the applicable maximums here, to support the constitutionality of a forfeiture judgment more than six times greater than that sought by the government in this case. 764 F.3d at 1060-61.

### 4.  Harm Caused by Offense

The defendant's crime of conviction, involving smuggling deadly weapons from the United States into Mexico, is a serious one with substantial risk of harm to the general population. As discussed in the government's original forfeiture brief (Doc. 94. p. 4), a great amount of harm was caused by this offense. The defendant was responsible for smuggling numerous weapons into Mexico: two .38 caliber handguns, one 9mm handgun, 100 rounds of .50 caliber BMG ammunition, 3,500 rounds of 5.7mm ammunition, 8,000 rounds of 7.62 caliber ammunition, 4,000 rounds of 5.56 caliber ammunition; 6,000 rounds of 2.23 caliber ammunition, 3,100 rounds of .38 Super ammunition, 3,000 rounds of 9mm ammunition, 1,500 rounds of 10mm ammunition, 2,000 rounds of .380 Auto ammunition, 2,000 rounds of 5.45 caliber ammunition, 3,000 rounds of .45 ACP caliber ammunition, and 1,000 rounds of .357 caliber ammunition. These three firearms and the 37,200 rounds of ammunition have been, are being, and will continue to be used by violent criminal organizations to enforce their illegal activity. The smuggling of these firearms and ammunition to Mexico has a significant negative impact on the health, safety, and morals of our country. Finally, the defendant did not commit this crime on simply one occasion, but rather engaged in the smuggling of deadly weapons repeatedly over the course of 26 months.

In *United States v. Mackby*, 339 F.3d 1013 (9th Cir. 2003), the Ninth Circuit found that $729,454,92 in civil penalties and treble damages assessed upon the defendant's conviction for submitting false Medicare claims did not violate the Excessive Fines Clause of the Eighth Amendment. *Id*. at 1014. In support of its ruling, the court stated that the government has a strong interest in preventing fraud, and noted the harm generally caused by such offense (such as difficulty administration of the Medicare and undermining of public confidence in in the system). *Id*. at 1019. Here, where the harm from the defendant's offense is arguably far more severe – death, injury, threats, torture, facilitation of narcotics and human smuggling, and deterioration of international relations between the United States and Mexico – a substitute assets judgment of $21,027.50 cannot be deemed excessive.

Similarly, where bulk cash smuggling from Canada into the United States was found to be sufficiently serious to support forfeiture of $132,245.00 (*$132,245.00 in U.S. Currency*, 764 F.3d at 1062), firearms and ammunition smuggling from the United States into Mexico is sufficiently serious to support a substitute assets forfeiture judgment of a mere fraction of that amount. To an even greater extent than in bulk cash smuggling offenses, "had [the defendant]'s offense gone undetected, it would have undermined the Government's efforts to 'break the cycle of criminal activity of which the [weapons] smuggling is a critical part.'" *Id*. at 1061. In fact, in designating firearms and ammunition as unlawful to export into Mexico without a proper license, the United States government has determined that the exportation of firearms and ammunition in Mexico must be controlled for the reasons of national security, regional stability, crime control, and firearms convention. 15 C.F.R. § 738, Supp.1.

Finally, the defendant's own statements establish the severity of the harm caused by his crime. He was smuggling weapons on behalf of high-ranking members of the Sinaloa cartel, a dangerous criminal organization in Mexico. The organization then uses the weapons to commit – among other crimes –threats and murders of other individuals in facilitation of their criminal activity.

The defendant's argument that the forfeiture judgment sought by the government is excessive because it will cause him financial hardship (Doc. 113, p. 2) is of no moment. *See United States v. Singh*, 783 Fed. Appx. 765 (9th Cir. 2019) (hardship not a factor in Ninth Circuit's Eighth Amendment analysis; even if it were, would not outweigh *Bajakajian* factors in favor of forfeiture).  Similarly, his general complaints of unfairness (Doc. 113, p. 2) do not detract from the constitutionality of the forfeiture sought.  *See United States v. Real Prop. Titled in the Names of Kang and Lee*, 120 F.3d 947. 950 (9th Cir. 1997) (defendant's direct and continuing role in offense outweighs harshness claim). Here, the defendant engaged in serious criminal conduct by arming a violent criminal organization with deadly weapons, thereby causing and contributing to untold harm, and he did so on multiple occasions over a significant period of time.  Not only do all four *Bajakajian* factors weigh in favor of the proposed Final Order of Forfeiture, but in light of the defendant's heinous criminal conduct, the requested forfeiture judgment can hardly be considered unfair.

## C. Conclusion

The government respectfully requests that this Court enter a Final Order of Forfeiture against the defendant in the amount of $21,027.50, the value of the firearms and ammunition involved in the defendant's offense of conviction.   These firearms and ammunition are subject to forfeiture and are unavailable for forfeiture due to an act or omission of the defendant.   Therefore, the government is entitled to the forfeiture of substitute assets in the amount of the value of the firearms and ammunition, which the government has established, and which the defendant does not contest, is $21,027.50.

Respectfully submitted this 20th day of September, 2021.

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

*s/ Angela W. Woolridge*

ANGELA W. WOOLRIDGE
Assistant U.S. Attorney

Copy of the foregoing served electronically or by
other means this 20th day of September, 2021, to:

Erendira Castillo, Esq.
Attorney for defendant Marco Antonio Peralta-Vega