**ERÉNDIRA CASTILLO, ESQ.**
COUNSEL FOR DEFENDANT
AZ BAR NUMBER: 017963
  ERÉNDIRA CASTILLO,
  A LAW PRACTICE
  POST OFFICE BOX 86644
  TUCSON, ARIZONA 85754
  erendira@erendiracastillolaw.com
   Voice: 520.477.1925

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, )<br>           )<br>     Plaintiff, )<br>           )<br> v.         )<br>           )<br>Marco Antonio Peralta-Vega, )<br>           )<br>     Defendant. )<br>_____) | CR19-00338-JGZ-TUC-JR<br><br>Court Ordered Briefing on<br>*Bajakajian* Factors |

It is expected that excludable delay will not be caused because of this motion or ordered issued as a result based on this motion. 18 U.S.C. §3161 et. seq..

Facts:

Mr. Peralta-Vega was convicted of 18 U.S.C. 554 – Smuggling Goods from the United States. The offense itself is very broad:

> Whosoever fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States, shall be fined, under this title, imprisoned not more than ten years, or both.

In this case, Mr. Peralta-Vega plead guilty. Yet, he never crossed any of the ammunition into Mexico. Rather, Mr. Peralta "facilitated" the activity knowing that the people who took the ammunition and three handguns from him intended to take it to Mexico. Now the government now seeks "substitute assets" for the value of the ammunition. The substitute assets the government seeks in this case is a money judgment which will likely turn into a civil judgment or lien for $21,027 which is the value of the ammunition ordered from the March 2016 to December 2018.

The only asset owned by Mr. Peralta is his community property home. The home was given to his wife by her mother. They then sought a loan to remodel the house and the house re-titled into joint community property. Mr. Peralta's initial involvement grew out of difficult financial situation resulting from the desire to help his brother who was suffering from a challenging illness requiring extensive treatment and medical attention seeking care from variety of providers throughout Mexico, such as, Hermosillo, Sonora, Monterey, Nuevo Leon, and Mexico City D.F.. The government has not presented evidence that Mr. Peralta Vega benefitted financially from his participation in the offense which does not have an element requiring any pecuniary motive or gain.

The government did administratively forfeit two vehicles a 2016 Dodge Ram truck with a value of at least $25,000 and approximately $10,800 cash. The other vehicle was a 2017 Jeep which was returned to the finance company and the equity gained in the vehicle was lost. Mr. and Mrs. Peralta did not challenge the administrative forfeiture due to their sense of overwhelm and language barriers as the notice was provided in English. Counsel did advise the government that they were seeking judicial forfeiture, but the appropriate paperwork was never completed. The government has argued that the vehicles were administratively forfeited as "instrumentalities" and counsel assumes that the money was forfeited under the theory that it was "proceeds." Arizona is a community property state so any lien on the property will infringe on the community's interest.

Mr. Peralta Vega has challenged the forfeiture allegation from the onset and challenges the government's request for the Court to order substitute assets. Here, the government seeks to recuperate the value of the assets that were never in the possession of the government and which in and of themselves are not illegal or obtained by illegal means

- ammunition. Ammunition is not contraband. These items were delivered, picked up by another party and transferred to another party.

Substitute assets are correctly sought when the asset obtained through illegal profits such as a house, plane, boat, jewelry, or something purchased for the purpose of furthering the illegality or obtained from the proceeds of the illegal act or substance which are then destroyed, sold, or placed outside the jurisdiction of the United States. That is not the case here. The government is attempting to extract a fine and call it forfeiture by evading the Constitutional, statutory and guideline limitations on a fine as part of the criminal sentence.

**Argument and Law**:

A. The issue before the Court

The instrumentality of the offense is the ammunition, and the question is whether the government can seek substitute assets for the instrumentality of the offense and if it can, is the value of the instrumentality excessive considering the recommendation in the PSR, the Court's adoption of the PSR with respect that no fine be imposed without violating the constitution, 5th and 8th Amendments, procedural and substantive due process protections, U.S.S.G. and statutory requirements pursuant 18 U.S.C. §3553(a). Mr. Peralta contends that the government can seek forfeiture of the instrumentality but not its value through substitute asset provisions intended for racketeering in this case.[1] Further, Mr. Peralta Vega's contention is that he does not have the means to pay and that the $21,027 is excessive. More importantly, Mr. Peralta Vega contends that in the context of substitute assets, where there is no disgorgement of unlawful gains, the United States Sentencing Guidelines provide both the procedural and substantive guidance (as the legislative authority) to the Court for the determination of the propriety of the fine and/or forfeiture. See U.S.S.G. §5E1.2. and 18 U.S.C. §3553(a).

. . .

. . .

---

[1] *U.S. v. Valdez*, 911 F.3d 960 (9th Cir. 2018) has addressed the issue of substitute assets however Mr. Peralta-Vega contends that *Valdez* was wrongly decided and failed to distinguish the history and purpose of forfeiture in this context and never addressed *Bajakajian*/8th Amendment/Excessive Fines Clause before this Court now and did not consider the impact of 18 U.S.C. §3553(a) and U.S.S.G..

3

Historical Context of Forfeiture:

The use of forfeiture in criminal proceedings has made the criminal justice system an industry. Forfeiture has fueled the motive for criminal prosecutions to meet budget shortfalls and provides a perverse financial interest for law enforcement in local, state, and federal jurisdictions.[2] Historically, forfeiture is well entrenched in common law as are laws which are considered unenforceable such as the laws that permitted Japanese internment, slavery, and restrictive covenants due to race. Other countries who share our common law history have recognized the need for the evolution of the doctrine.[3]

Here, the requested substitute assets are tantamount to a fine, a fine which is not recommended by the PSR and not supported by evidence in the record. More importantly, the PSR noted that Mr. Peralta does not have the means to pay a fine. Because forfeiture in this case is punitive the 8th Amendment analysis applies. (There is no evidence of profit. The money Mr. Peralta had at the time of his arrest was administratively seized.) Mr. Peralta-Vega used his credit card to order the ammunition and the amount of the requested forfeiture is part of the debts Mr. Peralta-Vega is now in arrears as noted in the PSR. Mr. Peralta's income, prior to be taken into custody, while he was working in the produce brokerage company he recently started with a loan from his father, was insufficient to even meet his family's monthly needs. Currently, Mrs. Peralta depends on her parents and in-laws to support herself and her 4 daughters.

The Court in *United State v. Bajakajian*, 524 U.S. 321 (1998) determined that in a "failure to report" prosecution, forfeiting $357,144 lawfully obtained funds in the possession of the defendant was excessive and that the 8th Amendment's Excessive Fines Clause applied. Mr. Bajakajian did not appeal the $15,000 ordered forfeited and so the Court lacked the ability to vacate the forfeiture order. *Bajakajian* also does not address

---

[2] Drug Policy Alliance, Asset Forfeiture Reform https://drugpolicy.org/issues/asset-forfeiture-reform, las visited September 18, 2021.

[3] Pimentel, David (2012) "Forfeitures Revisited: Bringing Principle to Practice in Federal Court," *Nevada Law Journal*: Vol. 13: Iss. 1, Article 2. Available at: https://scholars.law.unlv.edu/nlj/vol13/iss1/2

the United States Sentencing Guidelines as well as 18 U.S.C. §3553(a) and the role this legislation plays in determining the propriety of a fine.  Here, the U.S.S.G. applicable fine is $20,000 to $250,000 at level 23.  However, the Court did not make a specific finding regarding what specific level Mr. Peralta was being sentenced at.  In the end, the Court imposed a sentence of 36 months which could be either a level 19 or level 20.

In determining whether to impose a fine, the Court must consider the defendant's ability to pay a fine.  *U.S. v. Robinson*, 20 F. 3d 1030, 1034 (9th Cir. 1994).  Here, the unobjected to PSR has established, by a preponderance of the evidence, that Mr. Peralta does not have the ability to pay a fine.  The government has not offered any evidence in rebuttal nor did the government object to that finding.  Mr. Peralta was appointed counsel for purposes of appeal and his family retained counsel on his behalf before the Court.  The PSR's recognition of his inability to pay a future fine is also noted. Mr. Peralta started his business to attempt to support his family and provide income, yet he has still fallen short.  Under these facts, the Court should not impose a fine not recommended by the PSR.  These facts bring into question the constitutionality and the substantive and procedural adequacy of the practice of seeking and granting substitute assets in this context.

The Court in *Bajakajian* first noted: "judgments about appropriate punishments for an offense belong in the first instance to the legislature." *United State v. Bajakajian*, 524 U.S. 321, 335 (1998).  Thus, this Court should defer to the United States Sentencing Guidelines and the procedural and substantive safeguards found therein along with the considerations in 18 U.S.C. §3553(a).  The PSR determined Mr. Peralta was unable to pay a fine.  Yet, the government seeks to circumvent this finding. The logical conclusion is that no fine (forfeiture) should be imposed here.  Regardless of that determination, the government now requests "forfeiture" by means of "substitute assets" of the value of the items intended to be taken out of the United States.

Once a Court determines that the excessive fines clause applies, the factors looked at in the *Bajakajian* case are as follows: (1) the essence of the crime and its relation to other criminal activity; (2) whether the defendant fits into the class of persons for whom the statute was principally designed; (3) the maximum sentence and fine that could have been imposed; and (4) the nature of the harm caused by the defendant's conduct.  The Second

Circuit in *U.S. v. Viloski*, 814 F.3d 104 (2nd Cir. 2016) reviewed a forfeiture order related to a money laundering and kickback scheme. Mr. Viloski was ordered to pay $75,000 in restitution and over $1,273,285.50 was ordered forfeited which was the total of the funds laundered and kickbacks jointly and severally liable with the other defendants in the case. In this case, the Second Circuit determined that "when analyzing a forfeiture's proportionality under the Excessive Fines Clause, courts may consider – in addition to the four factors we have previously derived from *Bajakajian* – whether the forfeiture would deprive the defendant of his livelihood, i.e. his 'future ability to earn a living.'" The Second Circuit determined that this is not an additional or "fifth factor" but rather a consideration under the *Bajakajian* analysis as an indirect factor that would take into consideration the individual characteristics and characteristics of the defendant. Further, the Second Circuit stated that "forfeitures should be concerned not with how much an individual has but with how much he received in connection with the commission of the crime" citing *U.S. v. Awad*, 598 F. 3d 76, 78 (2d Cir. 2010).

**The Bajakajian Factors**:

    1. <u>Essence of the crime and its relation to other criminal activity</u>.

18 U.S.C. 554 renders it illegal to export items based on law and/or regulation. This statute encompasses a wide variety of items. Here, the Court (over the defendant's objection) required that the defendant admit to the items listed in the indictment which gave rise to the amount of substitute assets sought. In this case, it involved ammunition and firearms exported to Mexico without a license. Bullets and firearms are inherently dangerous items, but they are also legal as it was not a violation of law for Mr. Peralta to purchase these items in the first place. Any extrapolation as to "other criminal activity" and the crime itself is merely speculative.

The record lacks evidence as to the pecuniary gain, if any, Peralta may have obtained. Restitution is not an issue here. There are no victims. Only because the criminal statute is boot strapped to the civil statute and 18 U.S.S. 853(p) authorizes substitute assets is this authorized by statute. However, we are not talking about methamphetamine which is taken as part of a crime; lab equipment used to create methamphetamine where items are taken and destroyed. Nor are we addressing profits of the offense for which Mr. Peralta is

being "disgorged." The government has already "disgorged" Mr. Peralta of over $10,000 and a $25,000+ truck, and partial equity in another vehicle administratively. Mr. Peralta stated to the agents that he feared those who sought the items as he believed another person was killed by them raising the mitigating factor of duress. Here, the Court granted a downward variance as to the applicable guideline range when it sentenced Mr. Peralta to 36-months but otherwise adopted the guidelines and the facts as contained in the PSR. The Court made no upward departure, or any of the required findings that a fine was appropriate in this case. The substitute assets sought, what will likely become a civil judgment, will impact Mr. Peralta's community interest in his community property interest of his home in Nogales, Arizona and the community property interest in his future income and the ability to support his family. The Court cannot impinge on Mrs. Peralta's community interest as she is in effect an "innocent owner."

2. <u>Whether the defendant fits into the class of persons the statute was principally designed.</u>

The type of activity involved in this case and Mr. Peralta falls squarely within the ambit intended by the statute.

3. <u>The maximum sentence and fine that could have been imposed</u>.

The maximum statutory sentence permitted is 10 years, a fine of $250,000. It is a class C felony. A sentence of probation was permissible. Mr. Peralta is in criminal history category I (CHC I). The offense level for a violation of 18 U.S.C. §554(a) is 26. The authorized range for CHC I, offense level 26 is 63-78 months without acceptance of responsibility. The range after acceptance at CHC I, offense level 23 is 46-57 months as found in the PSR. The Court imposed a sentence of 36 months and 36 months of supervised release and a $100 special assessment – a sentence authorized if the defendant were found to be a level 19-20 (30-41 months). The Court did not impose a fine. The maximum fine according to the PSR is $20,000 to $200,00 for level 23. Offense level 19: $10,000 to $100,000. Offense level 20: $15,000 to $100,000. Mr. Peralta would argue that the appropriate offense level is 19 due to the ambiguity and the application of the rule of lenity. Thus, the applicable fine range should be $10,000 to $100,000.

4. <u>The nature of the harm caused by the defendant.</u>

Any actual harm is speculative at best.

**U.S.S.G. §5E1.2 – Fines for Individual Defendants**

§5E1.2 lays out a structure for determination if a fine is appropriate and what amount. The first factor stated in §5E1.2(a) "the court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." Here, the PSR has determined that Mr. Peralta does not have the means to pay a fine. It recommended the fine be waived and similarly the request for substitute assets, which is a fine, should be denied.

§5E1.2(d) states: In determining the amount of the fine, the court shall consider:

(1) the need for the combined sentence to reflect the seriousness of the offense (including the harm or loss to the victim and the gain to the defendant), to promote respect for the law, to provide just punishment and to afford adequate deterrence;
(2) any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources;
(3) the burden that the fine places on the defendant and his dependents relative to alternative punishments;
(4) any restitution or reparation that the defendant has made or is obligated to make;
(5) any collateral consequences of conviction, including civil obligations arising from the defendant's conduct;
(6) whether the defendant previously has been fined for a similar offense;
(7) the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed; and
(8) any other pertinent equitable considerations.
The amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive.

In this case, the Court has determined that the factors of 18 U.S.C. §3553(a) have been met. Just punishment and adequate deterrence have been satisfied by the 36-month sentence of imprisonment and three years of supervised release. The second factor is whether the defendant can pay a fine considering his earning capacity and financial resources has also been analyzed by the PSR writer showing that Mr. Peralta could not even make the monthly income to cover his family's needs. If the court grants the government's request for substitute assets, it will likely turn into a money judgement or lien which will impinge on Mrs. Peralta's rights as well. Yet, she has not committed a

crime and should not suffer the consequences of such a burden.  Mr. Peralta has worked at a warehouse packing produce making $12.00 an hour.  His gross wages were less than $2,000 a month.  He has worked on commission as a car salesman and spent more money traveling to work than the income he generated.   The produce brokerage company he started with hopes of supporting his family has not been profitable to date.  His ability to generate a significant income is diminished by his lack of fluency in English.  Even though he is a U.S. citizen and has a college education, his degree as an industrial engineer does not readily transfer into the American job market.  The government has not come forth with any evidence in support of such a fine.  The third factor accounts for the burden the fine places on the defendant and his dependents relative to alternative punishments.  Mr. Peralta is currently in custody; he is now in Oklahoma waiting to be transferred to his designated facility where he will serve his sentence.  His estimated release date is March 3, 2024.  Once he is released, Mr. Peralta will then be a convicted felon with a three-year sentence under his belt and he will be on supervised release.  It was difficult for Mr. Peralta to obtain employment during the two-years of his pretrial supervision (perhaps due to the pandemic.)  It will be more difficult as a convicted felon.  The conviction will further negatively impact his ability to pay a fine.  The fourth factor to consider is restitution – there is no restitution applicable as there are no victims.  The fifth factor requires the Court to consider collateral consequences including civil obligations arising from the offense.  At this time, counsel is unaware of additional collateral consequences besides the administrative seizures of the Dodge Ram valued at $25,000+ , $10,000+ in currency and the lost equity in the Jeep which were not contested out of confusion. 5E1.2(d)(6) requires the Court to consider if the defendant has paid such a fine before.  He has not.  The 7th factor is the cost of incarceration and subsequent supervision which is set out in the PSR.  Finally, the U.S.S.G. suggests that the Court consider other pertinent equitable considerations along with the final comment indicating that the fine along with the other sanctions be considered punitive.  Mr. Peralta has not received a "slap on the wrist."  The three-year term of imprisonment is significant for a first offender with no history of criminal conduct whatsoever.  Mr. Peralta exhibited exemplary behavior during his term of pre-trial supervision as the Court noted at sentencing.  Even though the Court had the

authority to impose a fine, it did not upon consideration of the 18 U.S.C. 3553(a) factors and the U.S.S.G. provisions at the time of sentencing.  The government has not shown that Mr. Peralta can pay a fine or that he profited from his crime.  Yet, the government seeks to circumvent the sentencing considerations and the legislative authority as adopted by Congress in 18 U.S.C. §3553(a), the applicable U.S.S.G. provisions by invoking the unrestrained and overbroad forfeiture provisions authorizing substitute assets.

The Court's role here is to ensure that the legislative and constitutional considerations temper the government's unreasonable attempts to overreach.  Moreover, procedural due process and substantive due process considerations cannot be avoided merely because the government invokes 18 U.S.C. §853(p).  18 U.S.C. §3553(a), U.S.S.G. and various constitutional restraints are all considerations which the Court must consider before allowing the government to circumvent well-established sentencing provisions by calling a fine "forfeiture."  These provisions supplement and ensure that the 8th Amendment Excessive Fines Clause are not violated.  Substitute assets which are not "disgorgement" of ill-gotten gains cannot be granted just because they are sought.  Here, the amount requested is the amount the government can prove Mr. Peralta spent on ammunition not what he profited.  It is also not contraband or the instrumentality of the offense.  It is truly a fine – punishment in the form of a money judgment.  It is merely semantics to call it "forfeiture" in this context.  Thus, the request for forfeiture/substitute assets – an excessive fine – should be denied.

RESPECTFULLY SUBMITTED:       September 20, 2021.

Counsel for Defendant,

s/   *Eréndira Castillo*
Eréndira Castillo, A Law Practice

*CERTIFICATE OF SERVICE:  I hereby certify that the above date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant*: Angela Woolridge, A.U.S.A..