1          UNITED STATES DISTRICT COURT

2             DISTRICT OF ARIZONA

3

4   United States of America,    )
                                  )
5             Plaintiff,          )
                                  )
6   vs.                           )   CR-19-00338-TUC-JGZ-JR
                                  )
7   Marco Antonio Peralta-Vega, )
                                  )   Tucson, Arizona
8             Defendant.          )   September 7, 2021
    _____)   3:43 p.m.

9

10

             TRANSCRIPT OF FORFEITURE HEARING
11       BEFORE THE HONORABLE JENNIFER G. ZIPPS
              UNITED STATES DISTRICT JUDGE
12

13  For the Plaintiff:
        Ms. Angela W. Woolridge
14      U.S. Attorney's Office
        405 West Congress Street, Suite 4800
15      Tucson, AZ  85701

16  For the Defendant:
        Ms. Diana Erendira Castillo-Reina
17      Law Practice of Erendira Castillo
        P.O. Box 86644
18      Tucson, AZ  85754

19  Interpreter:
        Ms. Hortensia Studer
20

21

22  Proceedings recorded by mechanical stenography, transcript
    produced by computer.
23

                   Aaron H. LaDuke, RMR, CRR
24             Federal Official Court Reporter
                     405 W. Congress St.
25                Tucson, Arizona  85701

P R O C E E D I N G S

1

2       THE CLERK:  In criminal matter 19-338, United States

3  of America versus Marco Antonio Peralta-Vega, on for

4  forfeiture hearing.

5      Counsel, please state your appearances.

6       MS. WOOLRIDGE:  Good afternoon, Your Honor.  Angela

7  Woolridge appearing on behalf of the United States.

8       THE COURT:  Good afternoon.

9       MS. CASTILLO-REINA:  Good afternoon, Your Honor.

10  Erendira Castillo-Reina on behalf of Marco Antonio

11  Peralta-Vega.  He is appearing via video teleconference, Your

12  Honor, from Florence, and being assisted by the federally

13  certified Spanish language interpreter.

14       THE COURT:  Thank you.  Good afternoon.

15      Good afternoon, Mr. Peralta.

16       THE DEFENDANT (Through interpreter):  Good afternoon,

17  Your Honor.

18       THE COURT:  All right.  So I have the filings here

19  regarding the forfeiture.

20      And I think, Mr. Peralta, that I'm going to spend most of

21  the time talking to the attorneys here.  If at any time you

22  can't hear or you need to have a conversation with somebody

23  here, let us know, okay?

24       THE DEFENDANT (Through interpreter):  Yes.  Thank

25  you, Your Honor.

1          THE COURT:  All right.  So I had the impression at

2   the sentencing that the forfeiture issues had been resolved,

3   but it's clear that that's not the case, so I want to make

4   sure I understand exactly what is at issue.

5          I have the proposed form of order that attributes a value

6   for each of the items that the government seeks to forfeit,

7   items that were listed in the indictment.  And I understand

8   that just as a broad challenge there's a challenge to the

9   issue of substitute assets and whether they're permissible

10  here or whether the amount of the substitute assets would be

11  excessive in light of the crime and the acts that are at

12  issue, but I want to just break this down a little bit so I

13  can establish what's disputed and what's not disputed.

14         So, Ms. Castillo, as far as this proposed final order of

15  forfeiture, is there any dispute as to the 29 items that are

16  listed in the proposed order, the specific items that are to

17  be forfeited?

18              MS. CASTILLO-REINA:  The value of those items?

19              THE COURT:  No, just the items that are listed.

20              MS. CASTILLO-REINA:  I believe in that order, Your

21  Honor, the items themselves are not in dispute, Your Honor.

22              THE COURT:  Okay.  So then my next question is not

23  whether there can be substitute assets, but as to the value

24  that's ascribed to each one of those 29 items, is there any

25  challenge as to the accuracy of any of those values that have

1   been assigned?

2           MS. CASTILLO-REINA:  No, Your Honor.

3           THE COURT:  All right.  In the objection that the

4   defense filed, there's an argument that the government has not

5   adequately established the necessary evidence to meet the

6   minimum requirements for forfeiture.  Is that just to the

7   extent that these are substitute assets, or is there an

8   argument that these 29 items, that the government hasn't

9   established that they are subject to forfeiture?

10          MS. CASTILLO-REINA:  With respect to the order and

11  the previous briefing that was submitted prior to the change

12  of plea -- I believe it is Docket -- I have it right here --

13  Document 75, Your Honor -- our position is that Rule 32

14  requires the Court and the government to establish the

15  necessary requirements for forfeiture.  So with that respect,

16  we were objecting to the degree that there hasn't been, in our

17  opinion; but the proposed order does make findings of facts

18  that if the Court adopts that order unchanged, I believe it

19  would probably be sufficient.  However, we were objecting as

20  to, I guess, the lack of establishing the facts necessary for

21  forfeiture.  Then we're also objecting to substitute assets in

22  this context, Your Honor.

23          THE COURT:  Well, before we get to the substitute

24  assets, I just want to talk about each one of these items.

25      All right.  Is it your contention that the defendant's

1  admissions at the change of plea hearing aren't sufficient to

2  provide the basis for forfeiture?

3       MS. CASTILLO-REINA:  No, ma'am.  We're just asking

4  the Court to make the appropriate findings based on the

5  record.  That's all.

6       THE COURT:  And the reason I'm asking is I just want

7  to ensure that there's not a request for an evidentiary

8  hearing, because I think we've addressed that a couple of

9  times, and I've been told that there is not a need for an

10  evidentiary hearing, but I want to make sure I didn't

11  misunderstand it.

12       MS. CASTILLO-REINA:  That's correct, Your Honor.

13  Mr. Peralta is not requesting an evidentiary hearing.

14       THE COURT:  So is the remaining argument then -- I

15  mean, the defendant has admitted that these items were items

16  that he had purchased and transferred or sold to a third

17  party.  That's my recollection of the change of plea hearing.

18       MS. CASTILLO-REINA:  Right.  And objections were

19  filed prior to the change of plea hearing, and so the

20  magistrate at that point had read the objections and went

21  ahead and did her Rule 11 colloquy according to what she found

22  was appropriate.

23       THE COURT:  And just so we're clear and not speaking

24  vaguely, the objections were whether or not Mr. Peralta needed

25  to admit each of the items that were listed in the indictment

1  as subject to forfeiture, right?

2          MS. CASTILLO-REINA:  That's correct, Your Honor.

3          THE COURT:  And he did admit those?

4          MS. CASTILLO-REINA:  Yes.  The magistrate did require

5  him to go through every one and essentially overruled our

6  objection, yes.

7          THE COURT:  Okay.  So if we have then the items that

8  he admitted that he sold to other persons that were going to

9  be exported to Mexico and we have a value that's not in

10  dispute as to those items, the items are no longer available,

11  so as I see it, the remaining issue is whether or not the

12  total value of these substitute assets is excessive.

13          MS. CASTILLO-REINA:  That's right, Your Honor.

14          THE COURT:  All right.  So then let's talk about the

15  specific numbers, and I'm not sure that I do understand all of

16  these.  Apparently the original number, the value of the

17  assets was $35,904.83, but this order only talks about 21,027.

18      Ms. Woolridge, do the 29 items that are listed here add

19  up to 21,000 or to 35,000?

20          MS. WOOLRIDGE:  Your Honor, the 21,000 is the number

21  that we were able to obtain actual documentation of, so we are

22  not going to seek any amount over what we were able to obtain

23  actual documentation of, and that was the reason for the

24  amendment.  We believe that there are -- the actual value is

25  more, but the $21,027.50 is what we were able to provide

1  documentation, we believe, sufficient to establish the values

2  of the firearms not seized.

3       THE COURT:  So where was the 35, almost $36,000

4  number?  What was that based on?

5       MS. WOOLRIDGE:  Your Honor, that was based on I

6  believe some additional -- there were additional firearms that

7  we were not able to either obtain the value for or confirm,

8  and it may have been the ammunition.  I'm sorry.  This is all

9  ammunition.  There was additional ammunition we were not able

10  to obtain the value for or confirm the value for, and so

11  that's the reason for the adjustment is essentially giving the

12  defendant the benefit of the doubt and only seeking those

13  values that we were able to confirm.

14       THE COURT:  All right.  And then there was additional

15  money that was seized and vehicles that were seized and

16  administratively forfeited.

17       MS. WOOLRIDGE:  Correct, Your Honor.

18       THE COURT:  The money that was seized, what was the

19  amount of that money?

20       MS. CASTILLO-REINA:  $9,538, Your Honor, in U.S.

21  currency and 24,620 Mexican pesos.

22       THE COURT:  And what's the U.S. value of that?  And

23  let me just ask -- maybe this doesn't matter depending on what

24  the government's answer is -- that money, it was

25  administratively forfeited on what grounds?

1           MS. WOOLRIDGE:  Your Honor, as instrumentalities of

2   the offense.

3           THE COURT:  And the theory being that this was money

4   that was going to be used to purchase or that had been

5   received for the purchase of ammunition?

6           MS. WOOLRIDGE:  Correct, Your Honor, or profits

7   therefrom.

8           THE COURT:  And then there were vehicles that were

9   seized?

10          MS. CASTILLO-REINA:  Yes, Your Honor, two vehicles.

11          THE COURT:  What was the value of the vehicles?

12          MS. CASTILLO-REINA:  If I may tell the Court the

13  value of the pesos.

14          THE COURT:  Please.

15          MS. CASTILLO-REINA:  $1,236.57 in today's exchange

16  rate.

17          THE COURT:  Okay.

18          MS. CASTILLO-REINA:  And with respect to the two

19  vehicles, Your Honor, I believe the Dodge was paid in full and

20  registered in Mexico, but I'm not sure about that.  And then

21  the other vehicle, which was a Jeep, was still being financed,

22  and I am not sure what the value is of that due to the

23  outstanding financing of the vehicle.

24          THE COURT:  Okay.  So is the only remaining argument

25  then whether or not the -- I mean, substitute assets, Ms.

1  Castillo, you wrote in your memorandum that currently, under

2  existing law, they're permissible.  And you've raised the

3  issue then whether or not there should be a further review as

4  to whether or not they're excessive.  So is the only issue,

5  since I'm bound by existing law, whether or not the $21,027.50

6  is excessive?

7       MS. CASTILLO-REINA:  Well, Your Honor, permissible

8  doesn't make it mandatory, and the government is seeking that.

9  But essentially at this point, after we've gone through the

10  other issues, the question is before the Court with respect

11  to, yes, whether or not it's excessive in light of the

12  sentence and other forfeitures which have taken place, in

13  light of the fact that forfeiture is an exercise in equity to

14  determine, you know, wrongful acts and what -- how to make it

15  right, I guess.

16       THE COURT:  All right.  So why don't I then hear

17  argument from counsel as to whether or not the proposed

18  $21,027.50 order would be an excessive fine.

19       MS. CASTILLO-REINA:  I am so sorry, Judge.  I didn't

20  hear the first couple words that you said.  I didn't

21  understand them.

22       THE COURT:  All right.  So I have the proposed final

23  order of forfeiture that essentially is providing for a

24  substitute asset total amount of $21,027.50.  I have a memo

25  where the defense is arguing that's excessive.  So I think the

1  only issue that I need to resolve at this point is to make a

2  conclusion as to whether or not it should be disallowed as an

3  excessive fine, so I would hear argument from counsel as to

4  that issue.

5          MS. CASTILLO-REINA:  Thank you, Judge.  I'm sorry.

6  Sometimes these masks make our job really hard.

7          THE COURT:  I understand.

8          MS. CASTILLO-REINA:  Do you want me to argue first,

9  Your Honor?

10          THE COURT:  Yes.

11          MS. CASTILLO-REINA:  Okay.  Your Honor, in this case

12  we have a presentence report, and in that presentence report,

13  the probation officer went through a pretty explicit and

14  detailed analysis with respect to Mr. Peralta-Vega's financial

15  situation.  In addition, prior to imposing sentence,

16  government counsel at the time, albeit it wasn't Ms.

17  Woolridge, essentially argued that Mr. Peralta-Vega was greedy

18  and that was the motivation for the offense.

19      Now what we're seeing is a man who is in difficult

20  financial straits, which in fact was the motivation for the

21  offense.  His brother was sick at the time, and he was having

22  a very difficult time financially.  And now here we are before

23  this Court determining essentially what the fine is going to

24  be in light of the fact that the presentence report indicates

25  that there should not be a fine because Mr. Peralta-Vega does

1 not have the means to pay a fine, yet we are going to go ahead

2 and impose a fine even though the individual before the Court

3 has no means to pay a fine.

4     So in light of the assets which the government has

5 recovered, which Mr. Peralta-Vega did not, for lack of

6 understanding I would note, in the fact he received this

7 information in English and English is not his first language,

8 he did not do what he needed to do in order to be able to

9 recover those assets, if at all, if they were subject to

10 recovery.

11     But this Court should take that into consideration, which

12 is, I would argue, nearly everything that the government's

13 already arguing, that while instrumentalities are different

14 than what substitute assets are, the situation is that we're

15 going to be putting Mr. Peralta-Vega in the same or worse

16 condition than he was when he committed the offense, and that

17 certainly doesn't go towards rehabilitation.  That certainly

18 doesn't go towards being able to be a participating and

19 successful member of our community.

20     At some point, he is going to have to reintegrate himself

21 into our community.  He is a lifelong resident of the border

22 area.  His father has a business.  His brother has a business.

23 He will be coming back and being part of our community.  Yet a

24 $21,000 fine, when an individual is already heavily in debt

25 and unable to pay his debts, is a lot of money.

1      And while the Court, you know, is imposing sentence, I do

2   believe that the Court has the ability and should determine

3   whether or not $21,000 plus is excessive in light of the

4   fact -- and we would argue that it would be, that a man with

5   four children and a wife, who is just trying to make ends

6   meet, whose major motivation for the offense was financial, to

7   deal with family urgencies, that is the evidence before the

8   Court.  And in light of that evidence and in that context,

9   Your Honor, $21,000 substitute assets, which isn't

10  mandatory -- it's only because the government sought to seek

11  it -- is a lot of money, and this Court has the ability, in

12  equity, to determine what is appropriate.  Thank you, Judge.

13          THE COURT:  Thank you.

14      Ms. Woolridge.

15          MS. WOOLRIDGE:  Thank you, Your Honor.

16      First, if I may begin, I was able to get some additional

17  information to answer some of the Court's questions about the

18  administrative forfeiture.  That was handled by Customs and

19  Border Protection as opposed to our office.  So I apologize.

20  I did not have that information readily at hand.

21      But, Your Honor, just to follow up, the pesos were

22  deposited, and at the time of the deposit, the value in U.S.

23  currency was $1,119.10.  The Dodge vehicle was registered to

24  the defendant's wife, not to the defendant, and it was valued

25  at $9,538.  And the Jeep vehicle was valued at $31,425 with an

1  unknown lien amount.  It was remitted to the lienholder, so

2  the government did not receive any monetary value for the

3  seizure, the administrative forfeiture of that Jeep.  So I

4  just wanted to clarify those amounts for the Court.

5       Your Honor, with regard to the argument of the defense, I

6  would point out that, as the Court noted, the case law as it

7  stands and has been affirmed supports the substitute assets

8  judgment that's requested by the government, and we don't

9  believe there's any reason to deviate from that existing

10  precedent and the Court's ability to order the forfeiture of

11  the substitute assets amount as requested by the government.

12  That amount is supported by documentation of all of the

13  ammunition and firearms that were, by the defendant's own

14  actions, placed beyond the reach of the Court and in fact

15  exported to Mexico in violation of the law.

16       Defense argues that the defendant will be put in either

17  the same or worse position as a result of his offense.  Well,

18  Your Honor, I would submit that that's appropriate.  A

19  defendant should not benefit financially from committing

20  crime.  That's the whole purpose of monetary consequences,

21  including forfeiture, that the defendant doesn't then come

22  into some windfall of having a benefit from having committed

23  their crime.

24       The defendant, by his own actions, has put himself in a

25  position where this forfeiture is appropriate and is supported

1  by law, and his actions were no less egregious by nature of

2  the financial difficulties, the consequences of these actions,

3  which quite frankly were foreseeable to someone who is

4  committing these egregious crimes that he would be exposed to.

5      I would point out that this substitute assets judgment

6  that the government is seeking is less than one-tenth of the

7  fine provided by law for the defendant's offense.  So, Your

8  Honor, we would point out that it certainly isn't excessive

9  when you look at the fact that the Court could order several

10 times over this amount as a fine, because Congress has

11 recognized that these offenses are serious enough that

12 punishment by a fine of up to a quarter million dollars would

13 be appropriate in this type of offense.  The government's not

14 seeking a fine, but they are seeking the value of the items

15 that the defendant, through his own actions, placed beyond the

16 jurisdiction of the Court and thus are unrecoverable.

17     So, Your Honor, I would submit that what the government

18 is seeking here is not only fair, but it's more than fair.  It

19 is -- we have provided a conservative estimate.  We, in fact,

20 adjusted it downward to only reflect those items that we had

21 concrete documentation of to avoid any challenge or any

22 problem there.

23     So, Your Honor, we believe that certainly it's

24 appropriate, it is well within the fine authorized for this

25 offense, and it reflects the severity of the offense, and it

1  serves the purposes of forfeiture by ensuring that one is not

2  in a better position as a result of having committed very

3  serious criminal offenses.

4      Thank you.

5          THE COURT:  Thank you, Ms. Woolridge.

6      So, Ms. Woolridge, tell me more about the seizure of the

7  vehicle and the money.  Under what circumstances did that

8  occur?

9          MS. WOOLRIDGE:  I apologize, Your Honor.  I'm going

10 to have to refresh my recollection because it's been quite

11 awhile since I have looked at the facts of this case in that

12 regard.

13     They were seized at the time of the incident.  They were

14 vehicles involved in the smuggling offense as well as money

15 that was found either in the vehicles or on the defendant's

16 person, and they were submitted for administrative forfeiture

17 at that time.  I know that --

18         THE COURT:  If you want to take a look to find out

19 the answer.  It looks like Ms. Castillo might have some

20 information as to that too.

21         MS. WOOLRIDGE:  Sure.  I will take a look while I let

22 Ms. Castillo --

23         MS. CASTILLO-REINA:  It's probably easier for me

24 because I have --

25         THE COURT:  If you'll use the microphone.  Thank you.

1          MS. CASTILLO-REINA:  Yeah.  I only have one as

2     opposed to Ms. Woolridge probably has many and it's harder for

3     her.

4          Your Honor, they were seized when a search warrant was

5     executed and an arrest warrant was executed at

6     Mr. Peralta-Vega's home, so they were taken from his house at

7     the time of arrest.

8          MS. WOOLRIDGE:  So I apologize.  I am --

9          THE COURT:  If that's the case, then my question

10    would be, what is it that ties those assets to the crime?  If

11    I'm going to take into account all of the assets, I mean, if

12    those were instrumentalities of the crime, if he was arrested

13    with ammunition in the vehicle and money in the car, it would

14    be a pretty clear tie, but if it's pursuant to that January

15    11th search warrant --

16         MS. WOOLRIDGE:  Your Honor, I believe -- and again I

17    am just summarizing, and I can find some actual documentary

18    foundation.  But my understanding is, so first of all, the

19    actual cash, we are proceeding under the proceeds theory,

20    under 18 U.S.C. 981, as it's proceeds -- or I shouldn't say we

21    are proceeding.  They were administratively forfeited, seized

22    and forfeited under 18 U.S.C. 981 as proceeds of the offense,

23    based on the defendant's own statements of having profited

24    from his ammunition and firearm trafficking offenses.  And the

25    vehicles were instrumentalities in that the defendant had used

1  them to cross the border and transporting these firearms as

2  well as both crossing the firearms and transporting them

3  within the United States as well as into Mexico, and so they

4  are instrumentalities and were forfeited under the provisions

5  in 22 U.S.C. 401, 19 U.S.C. 1595(a), and 18 U.S.C. 1956.

6          THE COURT:  So if those are profits from the crime,

7  should those be credited towards the amount of the substitute

8  assets?

9          MS. WOOLRIDGE:  No, Your Honor, because those are

10  separate theories.  The substitute assets are themselves the

11  assets of the crime, the weapons that were smuggled.  They

12  have their value separate from what the defendant profited

13  from smuggling them.  So we would submit that they're being

14  offered under a separate theory, as actually the actual

15  substance of the offense themselves as opposed to proceeds

16  from the offense, which is a separate theory, and that the law

17  provides for forfeiture of both of them.

18          THE COURT:  And then if you could refresh my

19  recollection as to the use of the vehicles for the crimes.

20          MS. WOOLRIDGE:  Your Honor, I'm working on refreshing

21  my own recollection, and I'm trying to pull up the defendant's

22  interview, but I know that there are also crossing records

23  that show the defendant using these vehicles, if my memory

24  serves me correctly, using these vehicles in connection with

25  the offenses.

1    But I apologize.  I'll be honest, I was not prepared to

2  address the administrative forfeiture matter.  Again, I'm

3  sorry.  I did not anticipate this being an item at issue, so

4  I'm doing the best to confirm that.  But the best of my

5  recollection is that it was based on statements of the

6  defendant as well as crossing history of the defendant using

7  these vehicles in connection with those events.

8         THE COURT:  Ms. Castillo.

9         MS. CASTILLO-REINA:  Just briefly, Your Honor.  I

10  believe that with respect to the use of the vehicles, those

11  are vehicles that my client crossed into Mexico with because

12  they were his vehicles, and those vehicles weren't necessarily

13  vehicles I believe that he was ever caught crossing anything

14  in.  My client had a business in Mexico which targeted him for

15  this type of activity, but I don't believe that the evidence

16  established -- and I could be wrong, but my recollection is

17  that the evidence didn't establish or tie the vehicles

18  directly to an actual crossing.

19         THE COURT:  So the memorandum that Ms. Castillo filed

20  refers to factors that the Court considers in determining

21  whether or not there is an excessive fine, and some of those

22  factors are the nature and extent of the crime, whether the

23  violation related to other activities, other penalties that

24  could be imposed, the extent of the harm caused, and, in one

25  of the Supreme Court cases, the discussion of the seriousness

1  of the offense and whether or not the harm caused was minimal

2  or not.

3       You know, certainly to the extent that what's been

4  forfeited were instrumentalities, I'm not sure that those

5  would fall into that analysis of excessive fines.  But I think

6  it would be helpful, since we don't have evidentiary issues --

7  although it sounds like we don't, I don't have all the facts.

8  Counsel, if you would give me one final briefing as to these

9  factors and how they apply in this case, considering both

10  what's administratively forfeited, whether that should be

11  considered as a reduction for the substitute assets or not,

12  and then the amount that's being proposed here, the $21,000,

13  in light of the factors about the seriousness of the offense

14  and whether or not harm was caused.

15       I mean, I do note that this offense involved a

16  significant transfer of ammunition on multiple, multiple

17  occasions.  It's not like the failure to report currency that

18  was in the Supreme Court case that was cited by counsel.  This

19  one is certainly much more serious, which has to be taken into

20  account.  But just to make sure that each side has an

21  opportunity to argue under the factors for determining whether

22  a forfeiture is excessive or the substitute assets would be

23  excessive, I just would like to give counsel an opportunity to

24  actually argue those factors.

25       Counsel, would you be able to provide that briefing

1   within 14 days?

2             MS. CASTILLO-REINA:  Yes, ma'am.

3             MS. WOOLRIDGE:  Yes, Your Honor.

4             THE COURT:  All right.  I'll ask that you provide the

5   briefing, and no more than ten pages, and it's just limited to

6   this one issue -- it doesn't have to be ten pages -- but how

7   these factors should apply in this case.

8         You know, the test is whether or not it's grossly

9   disproportionate, not whether or not the defendant has the

10  ability to pay it, although maybe there's some room for that,

11  some consideration.  But as I read the case law, it's more

12  tied to the seriousness of the offense.

13        Counsel, is there anything else that needs to

14  be addressed other than that, the request for briefing on that

15  issue?

16            MS. CASTILLO-REINA:  No.

17            MS. WOOLRIDGE:  Nothing from the government, Your

18  Honor.

19            MS. CASTILLO-REINA:  No, ma'am.

20            THE COURT:  All right.  Then we'll stand at recess.

21  And I'll get the briefing and then, based on the parties'

22  briefing, I'll issue a written ruling.

23            MS. CASTILLO-REINA:  Thank you, Your Honor.

24            THE COURT:  All right.  Thank you.

25            MS. WOOLRIDGE:  Thank you very much.  May we be

1    excused?

2            THE COURT:  You may.  Thank you.

3        All right.  Mr. Peralta, go ahead and knock on the door

4    behind you, and they'll let you back into the facility.

5            MS. CASTILLO-REINA:  May I ask him --

6            THE DEFENDANT (Through interpreter):  Thank you so

7    much, Your Honor.

8            MS. CASTILLO-REINA:  May I ask him to call me?

9            THE COURT:  Go ahead.

10       (Attorney-client discussion in Spanish off the record.)

11       (Court recessed at 4:17 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I, Aaron H. LaDuke, do hereby certify that I reported the foregoing proceedings to the best of my skill and ability, and that the same was transcribed by me via computer-aided transcription, and that the foregoing pages of typewritten matter are a true, correct, and complete transcript of all the proceedings had, as set forth in the title page hereto.

Dated this 27th day of October, 2021.


_____s/Aaron H. LaDuke_____
Aaron H. LaDuke, RMR, CRR
Official Court Reporter