```
                  UNITED STATES DISTRICT COURT

                    DISTRICT OF ARIZONA


United States of America,      )
                               )
     Plaintiff,                )
                               )        19-CR-00338
vs.                            )
                               )        Tucson, Arizona
Marco Antonio Peralta-Vega,    )        August 17, 2021
                               )
     Defendant.                )
_____  )
```

**TRANSCRIPT OF PROCEEDINGS**
**SENTENCING**


BEFORE THE HONORABLE JENNIFER G. ZIPPS
UNITED STATES DISTRICT JUDGE
TUCSON, ARIZONA


Anni Bryan, RDR, CRR
Official Court Reporter
(520)205-4268


Proceedings reported by realtime court reporter
Transcript prepared by computer-aided transcription

1                        **A P P E A R A N C E S**

2

3    For the Government:

4            Adam Rossi
             United States Attorneys Office
5            405 West Congress Street, Suite 4800
             Tucson, Arizona 85701

6

7    For the Defendant:

8            Yendi Castillo-Reina
             Federal Public Defenders Office
9            405 West Congress Street, Suite 501
             Tucson, Arizona 85701

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2                          *   *   *

 3          THE CLERK:  In criminal matter 19-338, United States

 4   of America versus Marco Antonio Peralta-Vega, on for

 5   sentencing.

 6       Counsel, please state your appearances.

 7          MR. ROSSI:  Good afternoon again, Your Honor.  Adam

 8   Rossi on behalf of Angela Woolridge for the United States.

 9          THE COURT:  Good afternoon.

10          MS. CASTILLO-REINA:  Good afternoon, Your Honor.

11   Yendi Castillo-Reina on behalf of Mr. Marco Antonio

12   Peralta-Vega.  He is present, out of custody.  He is being

13   assisted by the federally certified Spanish language

14   interpreter.  In the courtroom as well, Your Honor, are his

15   family members.

16          THE COURT:  Thank you.  Good afternoon.

17          THE DEFENDANT:  Good afternoon.

18          THE COURT:  Mr. Peralta, I saw you adjusting your

19   headset.  Can you hear okay?

20          THE DEFENDANT:  Yes, of course.  Thank you.

21          THE COURT:  Thank you.

22       We're here for sentencing, and I have the parties' filings,

23   a proposed order of -- a final order for forfeiture, the

24   presentence investigation report.

25       As far as the forfeiture issue, can that be resolved today?
```

1    Do we need to have another hearing?  What are the parties

2    requesting?

3              MS. CASTILLO-REINA:  Your Honor, I think we've just

4    submitted the objections to the final order of forfeiture.

5    Those I've incorporated by reference in the joint, and so I

6    believe the Court can --

7              THE COURT:  I'm having trouble hearing you.  Thank

8    you.

9              MS. CASTILLO-REINA:  Let me speak up louder.

10      We've submitted objections, Your Honor, and I believe the

11   Court can make a ruling and determine if it wishes to submit or

12   to sign that final order today.

13             THE COURT:  And I'll ask you about the objections,

14   then, when you speak regarding sentencing to make sure I have

15   all of the objections that you're raising.

16      Ms. Castillo-Reina, did you review the presentence

17   investigation report with your client?

18             MS. CASTILLO-REINA:  I have, Your Honor.

19             THE COURT:  Mr. Peralta-Vega, have you been satisfied

20   with the services of your attorney?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Sir, you pled guilty to the charge of

23   smuggling goods from the United States.  And based on your

24   plea, the Court does find you guilty of that offense in

25   violation of 18 United States Code Section 554(a) and 22 United

1    States Code Section 277(a).

2        I have reviewed the presentence report.  I have reviewed

3    the parties' filings.

4        There's no objection to the guideline calculation, correct?

5            MS. CASTILLO-REINA:  That's correct, Your Honor.

6            THE COURT:  I am going to adopt the guideline

7    calculation from the presentence report.  The Court finds that

8    the advisory sentencing guideline range is 46 to 57 months of

9    imprisonment.  I should note I've also reviewed the letters

10   that were submitted in support of Mr. Peralta, including

11   Mr. Peralta's own letter.

12       Ms. Castillo-Reina?

13           MS. CASTILLO-REINA:  Thank you, Your Honor.  May we

14   approach?

15           THE COURT:  You can remain right there.  I know we

16   normally do go to the podium, but with the health crisis,

17   everyone is remaining at counsel table.

18           MS. CASTILLO-REINA:  Yes.  Everybody's been doing it a

19   little differently, so I just wanted to clarify.  Thank you.

20       With respect to objections, the only objection I did

21   submit, Your Honor, was with -- a little bit about the facts of

22   the case, in addition to -- that is pretty much it, the fact

23   that Mr. Peralta-Vega was in kind of a snowball situation that

24   kind of got bigger and bigger, and he wasn't able to control

25   it.  And I don't believe that it was put in context in that

1    way, Your Honor.

2        I was concerned to see that the recommendation kind of

3    characterized Mr. Peralta-Vega's actions as one of greed.  And

4    so we did submit his brother's medical situation because that's

5    how the situation grew to what it was, and that is what made

6    him vulnerable to being disposed to listening to the offer that

7    was proposed to him.

8        Marco Antonio has had a very close-knit family.  In the two

9    years that I've gotten to know Marco Antonio and his family,

10   this is a very loving family.  This is a family that is very

11   tight-knit.  You could tell the moment that he came for his

12   initial appearance, when he was brought here before the

13   district court, that he was brought up in a family that was

14   full of love and care and attention.  And I think, as parents,

15   that's the life that we want to give our children.

16       But in a situation that found Marco Antonio was that he

17   found himself lacking.  He found himself in a situation where

18   his family needed financial resources, and he wanted to be

19   there financially and in every other way possible for his

20   brother and his family.  And recently, his father has also

21   fallen ill, and so this has made the family get even closer.

22       This is not a person that would normally be in this

23   situation, but for the fact that he had a business in Mexico

24   and was crossing legal materials.  And the people saw an

25   opportunity and began to pressure Marco Antonio, and he

1    demured.  And that was his mistake, and I can tell you right

2    now, Your Honor, this is something that will never happen again

3    to Marco Antonio.  He is very repentant.  He is ashamed of his

4    behavior.  He is asking the Court for mercy.  He understands

5    the gravity of his offense.  He's not here to make an excuse,

6    but he does want to be able to explain and have the Court

7    understand.

8         Since his arrest, he has had very difficult situations with

9    his family financially, and they've made the best of it.  He

10   started a business with a partner.  They have built an

11   agricultural business, and he hopes to leave that business to

12   his wife so that she has some source of income while he may be

13   incarcerated.

14        So, Your Honor, while the sentencing guidelines recommend a

15   46 to -- and higher, the recommended sentence by the probation

16   officer who wrote the presentence report is 46 months.  Our

17   position, Your Honor, is that 46 months for a person with

18   Mr. Peralta-Vega's history and characteristics is excessive.

19   What this Court has a mandate to do is to impose a sentence

20   that is enough; not more, but enough.  And a sentence of 46

21   months in this case is excessive.

22        The guidelines that the sentence is being recommended under

23   are guidelines that, until recently, were not really used much.

24   We don't have a whole lot of data under national standards.  In

25   my experience, having practiced in this district for over 20

1    years, luckily, we haven't had firearm exportation or

2    ammunition exportation until the last, I'd say, three, four

3    years.  We've been seeing this more and more.

4        But in my experience, common sentences for this offense are

5    not 46 months.  They've been substantially less.  And this

6    Court has the ability to disagree with the guidelines and also,

7    if not, also take into consideration the fact that Marco

8    Antonio and his behavior was uncharacteristically predisposed

9    for this because of the fact that his brother was in the

10   situation that he was in.  He had built himself a hole; he had

11   gotten into a hole financially, and that led to the situation.

12       The government is asking for substitute assets resulting

13   from the money that they say adds up to what the ammunition was

14   valued at.  We're objecting to substitute assets being granted

15   in this case, Your Honor, not only because I believe that the

16   law doesn't justify it.  However, the Court, in our position

17   is, it also has to take into consideration Bajakajian and

18   determine whether or not such an amount of forfeiture that the

19   government is asking for is appropriate in this case.

20   Bajakajian asked this court to make an equitable determination

21   of whether or not a fine -- a forfeiture is excessive.  And our

22   submission, in light of the presentence report and the

23   investigation that was conducted, our position is that the

24   amount of money the government is seeking is excessive.

25   Furthermore, Your Honor, I'd also like the Court to consider

1    the fact that there were other assets taken as part of this and

2    there were vehicles taken as part of the arrest at the time

3    that this offense occurred.

4        And weighing everything, Your Honor, a sentence of 46

5    months and over $20,000 in fines is excessive.  And we're

6    asking the Court to take into consideration the fact that

7    Mr. Peralta-Vega has no prior law enforcement contact, the fact

8    that Mr. Peralta-Vega also has had an absolutely stellar

9    performance while on pretrial release -- there have not been

10   any problems; he has done everything that pretrial requested --

11   and that, due to his age and personal history and

12   characteristics, he is not a person who is likely to

13   recidivate.

14       In this case, a sentence of 18 months is more than enough

15   to take into consideration the gravity of the offense and the

16   nature and circumstances of the offense.  And for those

17   reasons, Your Honor, we're asking for a sentence of 18 months.

18              THE COURT:  Thank you.

19       Mr. Peralta, I did read the letter you submitted, but this

20   is your opportunity to say anything else you want the Court to

21   consider.  If you're going to stand, I'll just ask that you

22   lift up the microphone and hold it.  Thank you.

23              THE DEFENDANT:  Yes, Your Honor.  First of all, I'd

24   like to apologize for being here at all.  I'm not that kind of

25   man who goes around looking for trouble.  I'd also like to

1    offer my apologies to the prosecutor for all the work that I

2    put her through.  And I'd also like to offer apologies to my

3    family, my parents, my wife, my kids, my brother.

4        And I would just also just ask you for your best decision,

5    please.  This has all served to help me value more greatly the

6    upbringing I received from my parents and my grandparents and

7    to value freedom.  And I think that's all.  Thank you very

8    much.

9            THE COURT:  Thank you, sir.

10       Mr. Rossi?

11           MR. ROSSI:  Thank you, Your Honor.

12       Your Honor, since the Court has had a chance to review all

13   the pleadings, I'll be brief.  But the fact that the defendant,

14   through his own actions, made these items unavailable for

15   forfeiture and the fact that there is a clear nexus to the

16   offenses in this case, it's very clear that the Court can and

17   should impose the order of forfeiture as listed in the final

18   order.

19       Turning to defense's request for 18 months, I know that

20   there was a reference that what he did was not on behalf of

21   greed.  But greed on behalf of good is still greed.  And

22   whatever virtuous reasons that he had for engaging in this

23   activity, he did not account for the fact that an incredible

24   amount of ammunition and body armor would cause unimaginable

25   violence and grief in Mexico.

1   The defendant was contacted by U.S. federal agents and

2   federal agents in Mexico and both times was told that what he

3   was doing was illegal.  And both times he continued to go and

4   do exactly what he admitted that he was doing.  So in a

5   situation like this, Your Honor, 18 months is not enough.  And

6   based on his continuous and reckless conduct in this case,

7   including putting innocent civilians in Mexico in grave danger,

8   we would ask that the 46 months be imposed, as it is

9   appropriate.  Thank you.

10        THE COURT:  Thank you, Mr. Rossi.

11   I do have some questions about the proposed final order of

12   forfeiture.  The proposal is for -- I believe the version I

13   have is $21,000 -- $21,027.50 in U.S. currency.

14   Do I have anything that says what that's based on?

15        MR. ROSSI:  Yes, Your Honor.  My understanding is that

16   it's based on the items that were transferred to the defendant

17   that he had purchased through and delivered through FedEx.  And

18   I believe that the total amount is based on the items that he

19   had purchased but were not recovered.  Later on, when

20   confronted with this with agents, it's my understanding that he

21   admitted that those items had been sent to Mexico.  So based

22   off of the defendant's statements and based off of the

23   investigations by the agents in this case, that's how we came

24   up to that number.  And I believe that those numbers are listed

25   on pages 1 and 2 in the final order of forfeiture.

1          THE COURT:  So there are 14 items listed in the final

2   order of forfeiture, and I take it what you're saying is the

3   $21,000 figure is the value of those 14 items.

4          MR. ROSSI:  Yes, Your Honor.

5          THE COURT:  But is there a reduction for any other

6   seizures that were made?  Ms. Castillo-Reina has mentioned the

7   vehicles, and I believe there was some cash that was

8   administratively forfeited.  How do those calculate into this

9   total?  Or do they?  Are they separately forfeitable?  The

10  vehicles, were those forfeited because they were considered to

11  be part of the offense or proceeds?  Or how did that occur?

12         MR. ROSSI:  That's correct, Your Honor.  The other

13  items that you're referring to, including the vehicles, I

14  believe were forfeited because those were independently, the

15  government was claiming, is claiming, that they were proceeds

16  from his illegal activities, and those are separate from the

17  fact that he got -- purchased these items, sent them to Mexico,

18  and was paid.  And those items, because they're gone, cannot be

19  recovered.

20      If I could have just one moment, Your Honor.

21         THE COURT:  You may.

22         MR. ROSSI:  I want to check something.

23         MS. CASTILLO-REINA:  Your Honor, may I be heard?

24         THE COURT:  You may.

25         MS. CASTILLO-REINA:  The original amount, Your Honor,

1    was 35,000 and change.  In negotiating with Ms. Woolridge, she

2    conceded and reduced the amount of the 35,000 to take into

3    consideration the cash and the pesos that were found in my

4    client's custody.  What isn't being considered, as I stated,

5    were the two vehicles that were taken.  And with respect to

6    that, they were administratively forfeited, and what happened

7    was that I had advised Mr. Peralta-Vega to mark complete

8    with -- to try to join the forfeiture of the vehicles with the

9    criminal case.  And I advised Ms. Woolridge that we hoped to be

10   able to deal with the administrative forfeiture and criminal

11   proceedings as well.  However, Mr. Peralta did not complete

12   that paperwork, and so the documentation was not submitted.

13   The vehicles and the cash were administratively forfeited.

14             THE COURT:  Without challenge or objection.

15             MS. CASTILLO-REINA:  With all -- I'm sorry, Your

16   Honor.  I didn't understand the Court.

17             THE COURT:  In an administrative forfeiture, there's

18   an opportunity to object.  But as I understand what you're

19   saying, no objection was made.

20             MS. CASTILLO-REINA:  It was communicated to government

21   counsel, but there was no documentation to support that.

22             THE COURT:  And you say "government counsel," that's

23   the counsel in the criminal case, but those vehicles weren't

24   part of the criminal case.

25             MS. CASTILLO-REINA:  Correct.

1          THE COURT:  Anything to add, Mr. Rossi?

2          MR. ROSSI:  Only that this number, as far as I know,

3   does not take into account the amount of cash that was

4   forfeited.  All of these items and this $21,000 number is the

5   actual amount of the firearms and ammunition that we're seeking

6   judgment for, and the invoices that the government was able to

7   obtain add up to that amount.  So that is the reason why we're

8   requesting the $21,000.

9          THE COURT:  So there seems to be a dispute, then, as

10  to whether or not that's the correct amount, except that,

11  Ms. Castillo-Reina, you believe that the amount was reduced

12  from 35,000.

13         MS. CASTILLO-REINA:  That was my understanding, Your

14  Honor.  It was originally 35,000.

15         THE COURT:  Do you have any information on that,

16  Mr. Rossi?

17         MR. ROSSI:  Only that if that's the case -- well, no,

18  I don't.  Short answer.

19         THE COURT:  Thank you.

20    As to the forfeiture issue, the Court does find that the

21  forfeiture is appropriate, that the nexus has been established.

22  The Court does not conclude that the amount that's being sought

23  is excessive if that amount is based on the value of the

24  specific items that were trafficked and which were seized and

25  which are listed.  I do think I need further information to

1    establish that that is the case and that there weren't any

2    further reductions.

3        So I'll set a further hearing as to the amount of the

4    forfeiture, but as to the objections or arguments against

5    forfeiture and substitute assets, I'm going to deny those

6    objections and arguments.

7        As to the sentencing, Mr. Peralta-Vega was involved in

8    conduct that can only be described as destructive, that

9    knowing, ordering, for the purpose of transporting to Mexico,

10   large quantities of ammunition, high-capacity magazines,

11   ballistic body armor plates in very significant quantities, is

12   destructive.

13       What's of concern to the Court in this particular case, in

14   addition to the circumstances of this offense, are the amount

15   of transactions that occurred here.  The report talks about 53

16   shipments documented by FedEx records between September of 2016

17   and November of 2018, that Mr. Peralta was stopped by Mexican

18   customs in December of 2018 with 499 high-capacity magazines

19   and that Mr. Peralta, unlike a lot of individuals that we see

20   here in court, has a college education, a loving family, and

21   really more resources than a lot of people would have to get

22   involved in this type of destructive and damaging conduct.  It

23   occurred over a significant period of time.  This was not one

24   or two or three transactions.  And the Court feels it's

25   important to take that into account.

1      I do note that Mr. Peralta provides support for his family,

2 that he was compliant with his conditions of release, so

3 compliant that pretrial services recommended that supervision

4 be discontinued pending the outcome.  And I do think that

5 warrants credit, and it does show that Mr. Peralta understands

6 and can comply with the law and with the requirements that the

7 Court imposes upon him.  But it doesn't outweigh the

8 significance, or completely outweigh the significance, of the

9 criminal conduct.

10      In balancing all of those considerations, I am going to

11 grant a request for a variance but not as great a variance as

12 has been requested.

13      I'm going to order, Mr. Peralta, that you be committed to

14 the Bureau of Prisons for 36 months.

15      There is a mandatory $100 special assessment you'll be

16 required to pay.

17      The Court finds you don't have the ability to pay a fine,

18 and I'll order that a fine be waived.

19      When you have completed the term of imprisonment, I'm going

20 to order that you be placed on a term of supervision for 36

21 months.  During that term of supervision, you'll be required to

22 comply with the standard conditions of supervision adopted by

23 this court in General Order 17-18, including the condition that

24 you not commit another crime.  I'm also going to impose each of

25 the special conditions that are listed in the presentence

1    report.

2        As to the forfeiture issue, as stated, I am going to order

3    forfeiture of the property that's listed in the report and

4    contained in the government's proposed order of forfeiture, but

5    I'm going to set a further hearing and have Ms. Woolridge

6    appear and have counsel consult before that hearing so that

7    we're clear as to what specifically is being considered in the

8    valuation for substitute assets.  And we'll get a date for

9    that.

10       Mr. Peralta, do you understand your sentence?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Sir, in your -- if you believe that the

13   Court has erred, then you do have a right of appeal.  To

14   preserve your appeal rights, you would be required to file a

15   notice of appeal within 14 days of today's date.

16       Do you understand your appeal rights?

17           THE DEFENDANT:  Yes, Your Honor.  Thank you.

18           THE COURT:  Counsel, we'll get a date for the

19   continued forfeiture hearing.

20       Mr. Peralta, are you prepared to surrender for service of

21   your sentence?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  Then I'll ask that Mr. Peralta be remanded

24   to the custody of the marshals at this time.

25           MS. CASTILLO-REINA:  Your Honor, may we ask for a

1 | recommendation from the Court?

2 | THE COURT:  You may.

3 | MS. CASTILLO-REINA:  May we ask the Court to recommend

4 | that Mr. Peralta-Vega be -- that BOP allow him to serve his

5 | sentence in southern Arizona and, specifically, BOP Wilmot, if

6 | possible, Your Honor.

7 | THE COURT:  I will make that recommendation to

8 | facilitate family visitation.

9 | We'll have a date for you in a minute, as far as the

10 | forfeiture hearing.  Oh, here we are:  September 2nd at 9:15.

11 | And then, counsel, if you'll also consult in advance so

12 | we're clear as to what the numbers are in the forfeiture order

13 | and I can make a final determination.

14 | MS. CASTILLO-REINA:  Your Honor?  I'm sorry.  Would it

15 | be possible to get a different date?  I have another proceeding

16 | where there's a Mam interpreter being required.

17 | THE COURT:  We will get another date, and we'll

18 | provide the additional date after the hearing in a minute entry

19 | order.

20 | MS. CASTILLO-REINA:  Thank you, Your Honor.

21 | THE COURT:  We'll stand at recess.  Thank you.

22 | (The proceedings were adjourned.)

23 | *   *   *

24 |

25 |

UNITED STATES DISTRICT COURT

1              **C E R T I F I C A T E**

2

3

4         I, Anni Bryan, court-approved transcriber, certify

5    that the foregoing is a correct transcript from the official

6    digital sound recording of the proceedings in the

7    above-entitled matter to the best of my ability.

8         Dated this 27th day of October 2021.

9

10

11                             _____/s/Anni Bryan_____
                               Anni Bryan, RDR, CRR
12                             Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT