**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Marco Antonio Peralta-Vega,<br><br>Defendant. | No. CR-19-00338-001-TUC-JGZ (JR)<br><br>**ORDER** |

The Court resolves in this Order Defendant Marco Antonio Peralta-Vega's remaining challenges to the Government's proposed Final Order of Forfeiture. (Docs. 95, 113, 123.) Having considered the parties' briefing (Docs. 94, 95, 113, 122, 123), and the record, the Court will overrule Defendant's objection to the proposed Final Order of Forfeiture and order forfeiture of substitute assets in the amount of $21,027.50.

**I.     BACKGROUND**

On February 6, 2019, Defendant was charged in a one-count indictment with smuggling firearms and ammunition from the United States into Mexico, in violation of 18 U.S.C. § 554. (Doc. 9.) The indictment alleged that Defendant exported or attempted to export: two Colt .38 caliber handguns; one Ceska Zbrojovka 9 mm handgun; 2,649 high capacity rifle magazines; 120 Ballistic Body Armor plates; 100 rounds of .50 caliber BMG ammunition; 3,500 rounds of 5.7mm ammunition; 8,000 rounds of 7.62 caliber ammunition; 4,000 rounds of 5.56 caliber ammunition; 6,000 rounds of 2.23 caliber ammunition; 3,100 rounds of .38 Super ammunition; 3,000 rounds of 9mm ammunition;

1,500 rounds of 10mm ammunition; 2,000 rounds of 380 Auto ammunition; 2,000 rounds of 5.45 caliber ammunition; 3,000 rounds of .45 ACP caliber ammunition; and 1,000 rounds of .357 caliber ammunition. (*Id*.) The Indictment provided notice that the Government was seeking forfeiture of the firearms and ammunition, or, if the forfeitable property was transferred out of the jurisdiction of the Court, forfeiture of any other property of the Defendant up to the value of the forfeitable property ("the Substitute Assets"). (*Id*.)

Defendant pleaded guilty and admitted he facilitated the illegal exportation into Mexico of the guns and ammunition identified in the indictment. (Doc. 86 at 14-15.) During his change of plea, he admitted that he received "37,200 rounds of ammunition in various calibers." (*Id.* at 13.) He "facilitate[ed] the purchase, delivery, and shipment of these items knowing that they were being illegally exported from the United States into Mexico." (*Id.* at 14.) He "pick[ed] up the items from [his home] and subsequently pass[ed] them to a separate individual in Nogales, Arizona, who would then smuggle the items from the U.S. into Mexico." (*Id.*; Doc. 106 at 4. ) He also "purchas[ed] and traffic[ked] two Colt .38 caliber handguns and one Ceska Zbrojovka 9-millimeter handgun . . . from the United States to Mexico." (Doc. 86 at 15.)[1]

The parties requested an evidentiary hearing to address Defendant's challenges to the Government's proposed forfeiture, but on the date set for the hearing, the parties agreed there were no evidentiary issues, only legal objections as to whether forfeiture of substitute assets in this case is appropriate and whether the amount requested is excessive. (Doc. 118.) The parties subsequently filed briefs stating their legal positions. (Docs. 122, 123.)

In the Proposed Final Order of Forfeiture, the Government lists the firearms and ammunition at issue and assigns a dollar value to each. (Doc. 112.) Because the firearms and ammunition have been removed from the jurisdiction, the Government seeks an order of forfeiture in the amount of $21,027.50, which is the total value of the forfeitable

---

[1] Although Defendant claims that "the Court (over the defendant's objection) required that the defendant admit to the items listed in the indictment which gave rise to the amount of substitute assets sought," (Doc. 123 at 6), Defendant admits that this issue was not raised at the change of plea hearing, counsel agreed that the scope of forfeiture should be determined by the district court, and the Defendant asked the Court to accept his guilty plea. (Doc. 95 at 1-2.)

property. (Doc. 112.) Defendant does not dispute that the guns and ammunition listed in the Proposed Final Order of Forfeiture are forfeitable. Nor does he challenge the value assigned to each item.[2] Defendant argues that the Government is not entitled to substitute assets, and that the substitute asset value is excessive, and therefore, an unconstitutional fine. (Doc. 123.)

## II.  DISCUSSION
### A.  The Government is Entitled to Forfeiture of the Ammunition and Firearms and Substitute Assets.

Forfeiture of the ammunition and guns in this case is authorized by 18 U.S.C. § 924(d). *See United States v. Soto*, 915 F.3d 675, 678 (9th Cir. 2019) (concluding 18 U.S.C. § 924(d) authorizes forfeiture of firearms and ammunition involving an offense of exporting in violation of 18 U.S.C. § 554); *United States v. Valdez*, 911 F.3d 960, 966 (9th Cir. 2018) (concluding that firearms and ammunition are "forfeitable property" under 18 U.S.C. § 924(d)). In addition, because the ammunition and guns were transferred or sold to a third party, or placed beyond the jurisdiction of the Court, the Government can seek forfeiture of substitute property. *See Soto*, 915 F.3d at 679 ("The forfeiture of substitute assets for the ammunition that [defendant] transferred to a coconspirator is authorized by 21 U.S.C. § 853(p)."); *Valdez*, 911 F.3d at 966 ("We join our sister circuits in holding that 28 U.S.C. § 2461(c) incorporates the substitute property provision in 21 U.S.C. § 853(p).").

Defendant argues that *Valdez* was wrongly decided, failed to distinguish the history and purpose of forfeiture in the context of substitute assets, never addressed the Eighth Amendment/Excessive Fines Clause, and failed to consider the impact of 18 U.S.C. § 3553(a) and the U.S. Sentencing Guidelines. (Doc. 123 at 3 n.1.) Nonetheless, *Valdez* and *Soto* are binding applicable authority on this Court. Defendant's arguments as to the correctness of those decisions must be addressed at the circuit level. And, although the defendants in those cases did not raise the same challenges as Defendant does here,

---

[2] There appears to be an mathematical error in the proposed order of forfeiture. Defendant admitted to exporting 37,200 rounds of ammunition. (Doc. 86 at 13.) The total rounds of ammunition listed in the order is 38,200. (Doc. 112.) Presumably there is a typo somewhere in the order. The Court notes that nonetheless there is an agreement as to the total value of the forfeited assets.

Defendant's arguments pertaining to the Eighth Amendment's Excessive Fines clause, 18 U.S.C. § 3553(a), and the Sentencing Guidelines, are arguments as to whether the forfeiture of substitute property is excessive, not whether the forfeiture is authorized by statute in the first instance. The propriety of the amount of forfeiture is addressed below.

### B. The Substitute Assets Do Not Constitute an Excessive Fine

The Eighth Amendment prohibits the imposition of "excessive fines." U.S. Const. amend. VIII. "Forfeitures are 'fines' within the meaning of the Eighth Amendment if they 'constitute punishment for an offense.'" *United States v. $100,348.00 in U.S. Currency*, 354 F.3d 1110, 1119 (9th Cir. 2004) (quoting *United States v. Bajakajian*, 524 U.S. 321, 328 (1998)). A criminal forfeiture can be "challenged as an excessive fine." *$100,348.00 in U.S. Currency*, 354 F.3d at 1119.

A forfeiture is excessive if it "is grossly disproportional to the gravity of a defendant's offense." *Bajakajian*, 524 U.S. at 334. *Bajakajian* does not mandate the consideration of any rigid set of factors in evaluating whether a fine is grossly disproportional. *United States v. Mackby*, 339 F.3d 1013, 1016 (9th Cir. 2003). The Ninth Circuit has, "nevertheless, looked to factors similar to those used by the Court in *Bajakajian* in [its] Excessive Fines Clause cases." *Id.* "In *Bajakajian*, the Supreme Court considered four factors in weighing the gravity of the defendant's offense: (1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties imposed for the violation, and (4) the extent of the harm caused." *$100,348.00 in U.S. Currency*, 354 F.3d at 1119. Applying those factors here, the Court concludes that forfeiture of $21,027.50 is not grossly disproportionate to the gravity of Defendant's offense.

#### 1. Nature and Extent of Crime

Defendant admitted to purchasing more than 37,200 rounds of ammunition so that it could be smuggled into Mexico, a violation of 18 U.S.C. § 554. (Doc. 86 at 13.) The parties do not cite any legislative history to reflect Congress' view as to the seriousness of this offense, although at minimum, the offense is sufficiently similar to smuggling currency

across the border where Congress criminalized the conduct "to emphasize the seriousness of the act[.]" *United States v. $132,245.00 in U.S. Currency*, 764 F.3d 1055, 1058 (9th Cir. 2014) (looking to legislative history to determine seriousness of offense). But unlike currency, the export here is guns and ammunition. While guns and ammunition are legal to possess in the United States, they are not legally possessed in Mexico. Moreover, guns and ammunition are inherently more dangerous than currency, and here, the Defendant's exportation involved substantial quantities of ammunition—37,200 rounds, including high-capacity rifle magazines, which may also raise national security concerns. (Doc. 86 at 13.) *See* U.S.S.G. § 2M5.2, Application Note 1 (recognizing offenses involving smuggling weapons and ammunition over 500 rounds from the United States are "harmful or ha[ve] the potential to be harmful to a security or foreign policy interest of the United States"). This factor weighs in favor of finding that the fine in this case is proportionate to the offense.

### 2. Other Illegal Activities

Defendant's act of smuggling the firearms and ammunition is also connected to other illegal activities, and thus also weighs in favor of imposing the forfeiture sought in this case. Firearms and ammunition are illegal in Mexico. Defendant was stopped by Mexican customs when he was found to be in possession of high capacity magazines which were seized. He was arrested and jailed for two days. (Doc. 106 at 4.) A Mexican customs officer was also arrested for attempting to allow Defendant entry. (*Id*.) Upon Defendant's subsequent arrest in the United States, he admitted that he was involved with two individuals that are "high level Sinaloa cartel members" and that he purchased three pistols for one of the individuals. (*Id*.) At his change of plea hearing, he admitted to purchasing 37,200 rounds of ammunition to send into Mexico. (Doc. 86 at 13.)

It is well known that firearms and ammunition are used by cartel members to perpetuate further crimes, as the cartel's very nature is a criminal organization. *See* U.S. Gov't Accountability Office, GAO-21-322, U.S. Efforts to Disrupt Gun Smuggling into Mexico Would Benefit from Additional Data and Analysis,

(2021), https://www.gao.gov/assets/gao-21-322.pdf. ("In Mexico, weapons smuggled from the United States often end up in the hands of [transnational criminal organizations] or other criminals, where they can be used against law enforcement officers and civilians . . . Such conduct includes acts of violence and abuse that threaten the safety of U.S. citizens and show a wanton disregard for human life[.]"). Defendant knew this. He admitted he previously made contraband deliveries to an individual who stole money from the cartel which later resulted in the individual's murder. (Doc. 86 at 5.) Defendant continued to smuggle weapons and ammunition to the cartel after the murder. (*Id.* at 4.) In light of this evidence, the Court concludes it is reasonable to infer that the Defendant was aware that the ammunition and firearms transferred into Mexico were to be used to further other illegal activities in Mexico. *See $132,245.00 in U.S. Currency,* 764 F.3d at 1058-59 (finding that district court's reasonable inference from the evidence was not clearly erroneous when it found that the currency was "probably connected" to other illegal activities). This factor weighs in favor of the forfeiture.

### 3. Other Penalties Imposed

"Regarding the third factor, [the Court looks] to 'other penalties imposed that the legislature has authorized' and the 'maximum penalties that could have been imposed under the Sentencing Guidelines' as measures of the gravity of the offense." *$100,348.00 in U.S. Currency*, 354 F.3d at 1122. "However, the maximum penalties under the Sentencing Guidelines should be given greater weight than the statutory maximum because the Guidelines take into account the specific culpability of the offender." *Id.*

Congress has authorized imprisonment of up to 10 years and a fine up to $250,000 for a violation of 18 U.S.C. § 554. 18 U.S.C. §§ 3559(a)(3), 3571(b)(3). The advisory sentencing guideline range applicable to Defendant was 46-57 months' imprisonment, based on a total offense level of 23 and criminal history category 1. (*See* Doc. 106.) The range of fines authorized under the Guidelines was $20,000 to $200,000. U.S.S.G. § 5E1.2(c)(3). (*Id.*) Here, Defendant was sentenced to 36 months' imprisonment and no fine

was imposed based on Defendant's inability to pay a fine.[3] Importantly, the proposed forfeiture amount of $21,027.50 is at the low end of the statutory fee range and the very bottom of the Guideline fee range. This factor weighs in favor of finding that the forfeiture is proportionate to the gravity of the offense.

### 4. The Extent of the Harm Caused

The Ninth Circuit has found that the smuggling of currency can constitute a "significant harm," relying in part on Congress's finding that the smuggling of currency "*creates the same harm as*, the smuggling of goods." *$132,245.00 in U.S. Currency,* 764 F.3d at 1061 (emphasis in original). Here, the Court concludes that the offense of exporting firearms and ammunition, and Defendant's acts specifically, constitute a significant harm, which weighs in favor of the proposed forfeiture. *See id.* Defendant's conduct was directly related to illegally trafficking firearms and ammunition into Mexico, where possession of such items is illegal. Defendant also admitted to providing the firearms to cartel members, and had knowledge that that an individual who was part of his smuggling activities was killed by the cartel. Defendant exported a significant quantity of ammunition over the course of several months, admitting to exporting 37,200 rounds of ammunition. The record shows that between September 2016 and November 2018, 53 shipments containing a total of 2,649 high-capacity rifle magazines; 37,200 rounds of various ammunition; and 120 ballistic body armor plates were delivered to Defendant's home. (Doc. 106 at 4; Doc. 86 at 13.)

### 5. Other Considerations

As *Bajakajian* does not mandate the consideration of any rigid set of factors in deciding whether a punitive fine is 'grossly disproportional to the gravity of a defendant's

---

[3] Defendant mistakenly states that the Court did not make a finding as to the specific offense level that Defendant was being sentenced at, and the Court imposed a sentence of 36 months which could be either level 19 or 20. (Doc. 123 at 5.) The Court clearly stated at sentencing that it was adopting the guideline calculation contained in the Presentence Report. (Doc. 133 at 5.) The guideline calculation included a finding of an offense level of 23. (Doc. 106 at 6.) That same calculation is included in the Court's statement of reasons. (Doc. 110.) The Court varied from the sentencing guidelines and imposed a below-guideline sentence in consideration of the 3553(a) factors, and specifically Defendant's compliance on pre-trial release and his role as provider for his family. (Doc. 133 at 15-16.)

offense, Defendant argues that the Court should consider his ability to pay the proposed substitute property and the resulting financial hardship he will suffer. The Court is not persuaded by this argument. In this case, every *Bajakajian* factor weighs heavily in favor of finding the forfeiture amount proportionate to the offense. Defendant's proposed financial hardship alone does not tip the scales in his favor. *See United States v. Dubose*, 146 F.3d 1141, 1146 (9th Cir. 1998) (rejecting a similar argument in determining whether restitution was grossly disproportionate because "an Eighth Amendment's gross disproportionality analysis does not require an inquiry into the hardship the sanction may work on an offender"). That Defendant may suffer some financial hardship is a reality in almost every case.

The Sentencing Guidelines also do not provide support for Defendant's argument that the Court should consider his ability to pay in evaluating the Government's request for forfeiture of substitute assets. The Guidelines do mandate that the Court assess a fine unless "[the defendant] is unable to pay and is not likely to become able to pay." *See* U.S.S.G. § 5E1.2 (setting guidelines for imposition of statutory fines unrelated to forfeiture). But the Guidelines do not contain a similar limitation for the inability to pay with respect to forfeiture, and instead provide that forfeiture "is to be imposed . . . as provided by statute."[4] U.S.S.G. § 5E1.4. The Court notes that other circuit courts have also rejected Defendant's argument that the Court should consider a defendant's ability to pay

---

[4] Defendant also asserts that the Court must consider the government's administrative forfeiture of other assets of the Defendant, pursuant to USSG § 5E1.2(d)(5), which states that in determining the amount of a fine, the Court should consider any collateral consequences of conviction, including civil obligations arising from the defendant's conduct. (Doc. 123 at 9.) This argument is not persuasive for several reasons. First, as discussed above, USSG § 5E1.2 pertains to the imposition of "Fines for Individual Defendants," not to forfeiture. Second, the Court was not presented with evidence as to the value of the administratively forfeited assets (vehicle and money), and the parties provide different values for the assets. The Government reported a value of $20,195.10 (2016 Dodge Ram valued at $9,538; $9,538 in U.S. currency; and $24.620 in pesos, which is $1,119.10 in U.S. dollars). (Doc. 122 at 1-2; Doc. 129 at 12-13.) Defendant estimated a value of $35,800 ($25,000 for the Dodge Ram and $10,800 in currency). (Doc. 123 at 2.) Third, regardless of which party might be correct as to the value of these assets, neither of the proposed values is excessive, even when combined with the $21,027.50 the Government seeks in substitute assets, under the *Bajakajian* factors. The combined total would still place the total forfeiture amount at about 25% of the top of the applicable guideline fine range of $20,000-$200,000.

the forfeiture amount. *See United States v. Suarez*, 966 F.3d 376, 388 (5th Cir. 2020) (rejecting "unable to pay" argument as irrelevant); *United States v. 817 N.E. 29th Drive, Wiliton Manors, Fla.*, 175 F.3d 1304, 1311 (11th Cir. 1999) (noting that excessiveness is "determined by comparing the amount of the forfeiture to the gravity of the offense . . . and not by comparing the amount of the forfeiture to the amount of the owner's assets").

The Court also rejects Defendant's argument that the criminal forfeiture will likely impact Defendant's community property and improperly impinge on his wife's community property interest. As the forfeiture sought is substitute property equivalent to the value of the firearms and ammunition that were the instrumentalities of the offense, this argument is unpersuasive.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the proposed forfeiture amount of $21,027.50 in substitute assets is appropriate and not grossly disproportionate to the offense in this case.

Accordingly,

**IT IS ORDERED** that Defendant's Objection to the Proposed Final Order of Forfeiture (Doc. 113) is **OVERRULED**.

**IT IS FURTHER ORDERED** that the Government's Proposed Final Order of Forfeiture (Doc. 112) is **ADOPTED.**

The Court will separately file the Final Order of Forfeiture (Doc. 112).

Dated this 18th day of May, 2022.

_Honorable Jennifer G. Zipps_
United States District Judge